IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-118-F

| | |
|---|---|
| CRYSTAL BASS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-25, -27] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Crystal Bass ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. Claimant filed a response to Defendant's motion [DE-30], and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI payments on December 5, 2011, alleging disability beginning December 11, 2010. (R. 30, 173-79). The claim was denied initially and upon reconsideration. (R. 30, 80-103). A hearing before an Administrative Law Judge ("ALJ") was held on November 6, 2013, at which Claimant, represented by counsel, a third-party witness, and a

vocational expert ("VE") appeared and testified. (R. 56-79). On March 25, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 27-48). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 23-26), and after incorporating additional evidence into the record the Appeals Council denied Claimant's request for review (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

2

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

gainful activity since the application date. (R. 32). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease and borderline intellectual functioning, as well as the non-severe impairments of depression, anxiety, bipolar disorder, and obsessive compulsive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 32-34). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild difficulties in her activities of daily living and social functioning and moderate difficulties in concentration, persistence, or pace with no episodes of decompensation of an extended duration. (R. 33-34).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform medium[1] work with the following specific limitations: no contact with the public and a relatively unchanging setting and process. (R. 34-41). In making this assessment, the ALJ found Claimant's statements about her limitations unreliable. (R. 36). At step four, the ALJ concluded Claimant is capable of performing her past relevant work as a caretaker. (R. 41-42). Alternatively, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 42-43).

Claimant contends the ALJ (1) improperly evaluated her impairments under Listing 12.05C for intellectual disability, and (2) failed to account for her moderate limitations in concentration,

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If an individual can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

4

persistence, or pace in the RFC. Pl.'s Mem. [DE-26] at 6-10.

## V. DISCUSSION

### A.     Listing 12.05C

To show disability under the listings, a claimant may present evidence either that the impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 416.925, 416.926. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. §§ 416.920(d), 416.925(c)(3), 416.926. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment," she fails to meet this burden. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

To meet the specific requirements of Listing 12.05, a claimant's impairment must first satisfy the diagnostic description for intellectual disability.[2] 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00A. Specifically, the claimant must demonstrate (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before the age of twenty-two. *Id.* § 12.05. Upon satisfaction of the diagnostic description, the claimant must meet the required severity

---

[2] The ALJ uses the term "mental retardation," however, effective September 3, 2013, that term was replaced with "intellectual disability" in the Listing of Impairments. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013).

5

level of the disorder, which is accomplished by satisfying any one of four categories labeled A through D. *Id.* In considering Listing 12.05, the ALJ found the listing not met based on the failure to satisfy one of the severity levels. (R. 33). Claimant contends her impairment satisfies the intellectual disability listing under category C, Pl.'s Mem. [DE-26] at 7, which requires (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, imposing an additional and significant work-related limitation of function, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C. The ALJ acknowledged that Claimant "was determined to have a full scale IQ of 70," but found her "degenerative disc disease does not cause a significant limitation in her ability to perform work-related functions. (R. 33). However, the "significant work-related limitation" requirement is satisfied where the ALJ has found that a claimant has other severe impairments. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (describing "significantly limits" as, "i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)"). Here, the ALJ at step two found Claimant's degenerative disc disease to be a severe impairment. (R. 32). Accordingly, the ALJ erred in concluding that Claimant did not meet the category C severity requirement.

Defendant does not address the ALJ's erroneous finding with respect to the severity requirement, but rather argues the ALJ's determination should be upheld because Claimant failed to demonstrate she satisfies the introductory paragraph of Listing 12.05C. Def.'s Mem. [DE-28] 12-16. The ALJ did not expressly address whether Claimant's impairments satisfy the diagnostic description. (R. 33). The Fourth Circuit has found error where there is evidence in the record that would support a finding that a claimant's impairment meets a listing, but the ALJ fails to provide a full explanation in support of a contrary determination. *Radford v. Colvin*, 734 F.3d 288, 295 (4th

6

Cir. 2013) (concluding the ALJ's "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings") (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). Where there are inconsistencies in the record and the ALJ fails to conduct the requisite analysis, the court cannot conduct a meaningful review. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (unpublished) (remanding where the ALJ failed to explain the claimant's failure to meet a listing where there was contradictory evidence in the record) (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Radford*, 734 F.3d at 296). Thus, the court must consider whether meaningful review is possible absent an analysis of the diagnostic description criteria by the ALJ.

Defendant, in support of the ALJ's decision, cites the following record evidence: Claimant's elementary school records before age 22 show she earned A, B, and C grades; she plays card games, talks to her grandmother, and uses Facebook on her computer; the ALJ gave great weight to Dr. Burnett's consultative examination findings that Claimant could add and subtract, recall six digits forward, understand simple tasks and instructions, appeared unimpaired in her ability to maintain concentration over time, and Dr. Burnett did not diagnose intellectual disability; Dr. Albert did not diagnose intellectual disability; and Claimant performed substantial gainful activity as a caretaker, which is semi-skilled work inconsistent with a finding of intellectual disability. Def.'s Mem. [DE-28] at 13-15. Claimant contends that the record contains the following evidence of adaptive functioning deficits: she dropped out of school in the eighth grade and was in special classes in school; she lives with her mother; she has poor spelling and math skills; she would have difficulty relating to others and would need assistance with personal, social, and occupational competence, including help managing her money; she has significant deficits in multiple verbal academic areas,

math, abstract reasoning and judgment with a limited ability to interact with others; and she has moderately to severely impaired coping skills. Pl.'s Mem. [DE-26] at 8. Claimant also contends the ALJ's reliance on her work history in assessing her intelligence is flawed. *Id.* at 7-8.

The ALJ's finding that Claimant has borderline intellectual functioning is sufficient to establish that she has significantly subaverage general intellectual functioning. *See Ragin v. Colvin*, No. 5:14-CV-851-D, 2016 WL 2600508, at *7 (E.D.N.C. Apr. 14, 2016) (unpublished) ("[T]he determination by the ALJ that plaintiff has borderline intellectual functioning establishes that plaintiff has significantly subaverage general intellectual functioning."), *adopted by* 2016 WL 2347872 (E.D.N.C. May 3, 2016). Additionally, Claimant's elementary school records show that she repeated second grade (R. 285), and the ALJ cited Claimant's reports that she dropped out of school in the eighth grade, repeated either sixth or seventh grade, was in special education classes starting in sixth grade, and received Cs and Ds on her last report card (R. 38). This evidence, in addition to Fourth Circuit precedent that IQ levels are presumed constant, absent contrary evidence, *Luckey*, 890 F.2d at 668, would support a finding of onset before the age of twenty-two. *See Ragin*, 2016 WL 2600508, at *7 (finding enrollment in special education classes provides further support for manifestation of the intellectual deficiency prior to age twenty-two) (citations omitted). Claimant's difficulties in school may also demonstrate deficits in adaptive functioning. *See Williams v. Colvin*, No. 5:12-CV-676-D, 2013 WL 6058204, at *8 (E.D.N.C. Nov. 15, 2013) (unpublished) (finding that claimant only completing through the sixth grade in school, repeating the third and fourth grades, and reporting (albeit inconsistently) that he attended special education classes constituted evidence of deficits in adaptive functioning); *Wynne v. Astrue*, No. 5:09-CV-367-FL, 2010 WL 2402843, at *5 (E.D.N.C. May 21, 2010) (unpublished) (finding deficits in adaptive

8

functioning in functional academic skills area shown where claimant "received a seventh grade education only and repeated both third and sixth grades").

In addition to functional academic skills, there is evidence of record to support deficits in adaptive functioning in other areas. *See Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. Feb. 23, 2012) (unpublished) ("Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.") (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). The ALJ determined Claimant to have moderate difficulties with regard to concentration, persistence, or pace. (R. 34). The court has previously found moderate difficulties in concentration, persistence, or pace, such as the ALJ found here, to be evidence of deficits in adaptive functioning. *See Ragin*, 2016 WL 2600508, at *7 ("[A] finding that a claimant has [] difficulties [in concentration, persistence, or pace] has been held to be facially inconsistent with a finding that the claimant has no deficits in adaptive functioning under Listing 12.05C and to require remand if the apparent inconsistency is not squarely resolved.") (citing *Mebane v. Colvin*, No. 2:13-CV-43-FL, 2014 WL 3510208, at *6-7 (E.D.N.C. July 15, 2014) (unpublished); *Rothrock v. Colvin*, No. 1:13CV497, 2016 WL 1175189, at *7 (M.D.N.C. Mar. 23, 2016) (unpublished)). The ALJ's limitation in the RFC to no contact with the public is further evidence of deficits in adaptive functioning. *See Williams*, 2013 WL 6058204, at *9 (finding questionable social skills can be evidence of a deficit in adaptive functioning). The ALJ's reliance on Claimant's testimony that she played cards, talked to her grandmother, and used Facebook on the computer a few times a day (R. 33-34), while it may be relevant to the inquiry, does not provide a sufficient basis for the court to conclude that the ALJ would have found Claimant to have no deficits in adaptive functioning.

In discussing Claimant's borderline intellectual functioning in the RFC analysis, the ALJ cited Claimant's ability to hold down several jobs in the past despite her intellectual functioning and her ability to perform unskilled work. (R. 41). However, although work history may be relevant to the Listing 12.05C inquiry, the court has previously recognized that "prior work history can be of limited relevance if it precedes the development of additional severe impairments," *Mebane*, 2014 WL 3510208, at *6, as is the case here where Claimant later developed degenerative disc disease. *See Ragin*, 2016 WL 2600508, at *8 (noting that Listing 12.05C "contemplates the circumstance in which a claimant with an intellectual impairment would be able to work but for one or more additional impairments"). Moreover, it is questionable whether Claimant's work history is accurately characterized by the ALJ. Aside from Claimant's earnings in 2010 of $12,662.00 from her work as a caretaker, Claimant earned nothing in 2008 and 2009, $140.00 in 2007, nothing in 2006, $504.00 in 2005, and nothing in 2004. (R. 199, 201-02). Claimant's earnings history is sporadic and does not reflect that she "held down" (R. 41) several jobs.

The ALJ's RFC analysis provides little insight into the consideration of the introductory paragraph of Listing 12.05C, if in fact it was considered at all. The Fourth Circuit has been clear that it is not the province of the district court to make such determinations in the first instance. *See Radford*, 734 F.3d at 296 ("Given the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court and the district court from undertaking a "meaningful review" of the finding that [the claimant] did not satisfy [the listing]."). In light of the inconsistent evidence in the record, which the ALJ's decision fails to adequately address, this matter must be remanded for further consideration of whether Claimant's impairment meets Listing 12.05C. Accordingly, it is recommended that this matter be remanded to allow the ALJ to fully consider and

explain whether Claimant's impairments meet or equal Listing 12.05C.

**B.      The ALJ's Finding Regarding Concentration, Persistence, or Pace**

Plaintiff also contends that the ALJ failed to account for her moderate limitations in concentration, persistence, or pace in the RFC in violation of the Fourth Circuit's decision in *Mascio*. Pl.'s Mem. [DE-26] at 9-10. The ALJ in finding Claimant had moderate limitations in concentration, persistence, or pace, discussed Claimant's problems with her memory and that she would hear people talking at times. (R. 34). The ALJ also noted Claimant's mental status examinations were frequently unremarkable and that she was noted to relate well with good concentration, which is presumably why he found her only to be moderately impaired in her ability to concentrate. *Id.* The ALJ's limitations to no working with the public and a relatively unchanging setting and process were sufficient to account for Claimant's moderate limitation in concentration. There is no error in the ALJ's determination that limiting the frequency of changes and contact with others required in Claimant's work would sufficiently address Claimant's reduced ability to sustain focus and concentration due to memory problems. *See Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016) (unpublished) (finding the ALJ's inclusion of a limitation to only occasional contact with coworkers and the general public in the RFC addressed claimant's moderate difficulties in concentration and persistence); *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished) (finding limitation "to performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounted for difficulties with concentration and persistence); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished) (distinguishing *Mascio* where the ALJ limited claimant to

11

"simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact," which accounted for a limitation in concentration and persistence by restricting the claimant to a stable work environment with only occasional public contact). This is not a case like *Mascio*, where the ALJ simply limited a claimant to simple, routine, repetitive tasks without further explanation. Accordingly, the ALJ properly accounted for Claimant's identified moderate difficulties in maintaining concentration in the RFC.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-25] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-27] be DENIED, and the case be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 5, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum**

and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the 22nd day of July 2016.

Robert B. Jones, Jr.
United States Magistrate Judge